UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| In re | (Chapter 7) |
| THE NASH ENGINEERING COMPANY, | CIVIL ACTION No. 3:25-cv-00055 (JCH) |
| Debtor. |  |

**ORDER GRANTING CHAPTER 7 TRUSTEE'S MOTION TO APPROVE SETTLEMENT STIPULATION WITH CENTURY INDEMNITY COMPANY AND PACIFIC EMPLOYERS INSURANCE COMPANY**

Upon consideration of the motion by George I. Roumeliotis, the duly appointed Chapter 7 Trustee (the "Trustee") of the chapter 7 bankruptcy estate (the "Estate") of The Nash Engineering Company ("Nash"), filed on January 3, 2025 [ECF No. 6[1]] (the "Motion"), for approval of the settlement (the "Settlement") embodied in the *Settlement Stipulation of Chapter 7 Trustee with Century Indemnity Company and Pacific Employers Insurance Company* appended to the Motion as Exhibit A (the "Settlement Stipulation") resolving all disputes between Century Indemnity Company and Pacific Employers Insurance Company (collectively, the "Insurers")[2] and the Trustee (together with the Insurers, the "Parties"), including the Trustee's prospective claim to avoid as a fraudulent transfer the Insurers' buyback in 2020 of certain liability insurance policies they had issued to Nash many years earlier; the Court having considered the Motion, the objections thereto filed by the Office of the United States Trustee and by G. Denver & Co., LLC, and the statements filed in support of the Motion; and this Court having held a hearing on the Motion on April 9, 2025 (the "Hearing");

---

[1] Filed as ECF No. 358 in the Chapter 7 Case, as defined below.

[2] All capitalized terms used herein are defined in the Amended Settlement Stipulation (hereinafter defined) unless otherwise defined within this Order.

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

### Background

A.  Nash filed a voluntary petition pursuant to Chapter 7 of Title 11, United States Code (the "Bankruptcy Code") on October 19, 2021 (the "Petition Date"), in the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court"), thereby commencing the case entitled *In re The Nash Engineering Company*, Chapter 7 Case No. 21-50644, in the Bankruptcy Court (the "Chapter 7 Case").  On October 20, 2021, the Trustee was appointed as the Chapter 7 trustee of the Nash bankruptcy estate (the "Estate").  Nash's liabilities consist almost entirely of Asbestos Personal Injury Claims, as defined in the Settlement Stipulation.

B.  For certain periods long before the Petition Date, the Insurers issued certain liability insurance policies to Nash containing no asbestos exclusion. The periods and amounts covered by these policies represented a small portion of Nash's overall liability for asbestos-related claims. On April 4, 2020, Nash and the Insurers entered into a Settlement Agreement and Release (the "Insurance Buyback Agreement") pursuant to which, *inter alia*, the Insurers agreed to "buy back" all of their known and unknown policies in exchange for (i) the Insurers' agreement to pay the next $14.35 million in defense and indemnity costs for asbestos personal injury claims (the "Policy Sale") and (ii) additional non-financial consideration.

C.  The Trustee has (i) asserted that the Insurance Buyback Agreement is or may be voidable as a fraudulent transfer under applicable law, and (ii) announced his intention to potentially bring an action, to be tried before a jury in the United States District Court for the District of Connecticut (the "District Court"), to set aside and recover the value of such transfer.

However, before the Trustee commenced such action, the Parties agreed to mediation of their disputes.

D. On March 31, 2023, the Bankruptcy Court entered its Order Authorizing Employment and Retention of Mediator [ECF No. 217] (the "Mediation Order"), pursuant to which Attorney Richard E. Mikels has served as mediator (the "Mediator") to facilitate a resolution of disputes between the Estate and the Insurers.

E. On December 21, 2023, the Bankruptcy Court entered an order [ECF No. 337] granting the Trustee's application to retain and employ Ankura Consulting Group ("Ankura") as an expert to assist the Trustee in quantifying and projecting liability for asbestos-related claims and to allocate liability among Nash's insurers, including to the Insurers under their policies.

F. Pursuant to the Mediation Order, the Parties engaged in an extensive mediation (the "Trustee-Insurer Mediation"), culminating in their execution of the Settlement Stipulation, subject to court approval through entry of the Approval Order, as defined in the Settlement Stipulation. The Parties have agreed that this Order constitutes an acceptable Approval Order.[3]

G. In summary, the Settlement provides for the Insurers (i) to pay $9,000,000 to the Estate at the Closing (as defined in the Settlement Stipulation), which is to occur when this Order has been entered and (unless waived by the Parties) become a Final Order (as defined in the Settlement Stipulation), and (ii) to use commercially reasonable efforts to obtain a release of the Estate from certain claims, amounting to approximately $1,500,000, of lawyers who defended asbestos claims for Nash before the Petition Date – such obligations and the Insurers' other obligations under the Settlement Stipulation to be in full settlement of all potential fraudulent

---

[3] This Order contains revisions from the version submitted as an exhibit to the Settlement Stipulation, reflecting, *inter alia*, matters raised in the UST Objection and the Gardner Denver Objection, referred to in Paragraphs K, M and N below.

transfer claims, the Insurers' remaining obligations under the Insurance Buyback Agreement, any other claims of the Estate against the Insurers, and any claims that could be made under the Policies. The Insurers are also purchasing the Policies from the Estate under 11 U.S.C. § 363(f) and seek an injunction protecting them from any further liability for insurance coverage under the Policies and an injunction protecting them from any further liability for the Avoidance Claims.

**The Settlement Motion**

H.   The Trustee filed the Motion in the Bankruptcy Court on January 3, 2025, accompanied by a Joint Motion to Withdraw the Reference [ECF No. 1[4]] whereby the Trustee and the Insurers jointly moved for the Motion to be heard by this Court pursuant to the "Standing Order re Bankruptcy Cases and Proceedings" dated September 21, 1984 (Daly, C.J.). That motion was granted on January 13, 2025 [ECF No. 13], and a Standing Protective Order in the standard form for this District was entered the same day [ECF No. 15] (the "Protective Order").

**Jurisdiction, Venue, Procedure, Notice, Objections, and Statements in Support**

I.   This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a).   This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H) and (O).  Entry of a final order on the Motion is proper under Article III of the United States Constitution.  Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

J.   Based on certificates of service filed with this Court, the Trustee has properly served actual written notice of the Motion, the proposed Settlement, the right to object thereto,

---

[4] ECF No. 359 in the Chapter 7 Case.

and the deadline and filing place for such objections, together with the date, time, and place of the Hearing, upon all parties in interest including all known holders of Asbestos Personal Injury Claims. In addition, to ensure the broadest notice possible, the Trustee provided due and adequate notice of the Motion to all known holders of Asbestos Personal Injury Claims, through their counsel, and published notice of the (i) Motion, (ii) Hearing, and (iii) Settlement Agreement in the *Hartford Courant* on February 18, 2025, the *New Haven Register* on February 18, 2025, *The Stamford Advocate* on February 17, 2025, *The Republican American* (published in Waterbury, CT) on February 18, 2025, and *USA Today* on February 19, 2025, all as detailed in the Notice of Publication of Chapter 7 Trustee's Motion to Approve Compromise with Insurers filed March 13, 2025 [ECF No. 31]. Such notice, including the aforesaid notice by publication, was good, sufficient, and appropriate under the circumstances of this case to provide adequate and appropriate notice to both known and unknown creditors and claimants, in accordance with Bankruptcy Code Section 102(1) and Fed. R. Bankr. P. 2002, 6004, 9014, and 9019; and no further notice need be given in respect of the Settlement. All parties in interest have been afforded reasonable notice and opportunity to be heard with respect to the Motion and the relief requested therein.

K. An objection to the Motion – or, more precisely, to certain aspects of the Settlement Stipulation and the proposed form of Approval Order – was timely filed by the Office of the United States Trustee, which has certain oversight responsibilities in bankruptcy cases including as set forth in 28 U.S.C. §§ 586(a)(3) and (5) [ECF No. 30] (the "UST Objection"). In addition, G. Denver and Co., LLC (successor to Gardner Denver, LLC, formerly known as Gardner Denver, Inc.) filed a "limited objection" to the Motion [ECF No. 39] (the "Gardner Denver Objection").

L.     Statements of support for the Settlement, including the full scope of relief included in the proposed form of Approval Order, were filed on behalf of 1,154 holders of Asbestos Personal Injury Claims [ECF No. 32] (the "Statements of Support").

M.     The Trustee, explaining to this Court his view that some or all of the points raised in the UST Objection and the Gardner Denver Objection reflect a misunderstanding of the terms of settlement intended by the Parties, has entered into and filed with this Court an *Amended Settlement Stipulation of Chapter 7 Trustee with Century Indemnity Company and Pacific Employers Insurance Company* [ECF No. 43] (the "Amended Settlement Stipulation") to which was appended a revised form of the proposed Settlement Approval Order to be entered by this Court, which, *inter alia*, clarify that (i) the only claims settled and property dealt with by the Settlement are those constituting Estate property, and (ii) the sale of the Policies to the Insurers under Section 363(b) and (f) of the Bankruptcy Code that constitutes a key aspect of the Settlement shall be a postpetition sale with the consequence that the prepetition Insurance Buyback Agreement shall be of no force or effect.

N.     The Amended Settlement Stipulation together with the revised proposed form of Approval Order have (i) resolved the UST Objection and (ii) addressed, by eliminating the basis for, those aspects of the Gardner Denver Objection related to the Insurance Buyback Agreement.

### Summary of Court's Conclusions

O.     The relief sought in the Motion[5] is in the best interests of the Estate and Nash's creditors. The Trustee has demonstrated good, sufficient, and sound business purposes and

---

[5] The terms "Motion" and "Settlement" as hereinafter used in this Order refer to the Motion and Settlement as modified by the Amended Settlement Stipulation and revised proposed Approval Order annexed thereto, and the term "Approval Order" as hereinafter used refers to this Order which in all material respects is the revised proposed form of Approval Order annexed to the Amended Settlement Stipulation.

justifications for the relief requested in the Motion. The compromise and settlement with the Insurers embodied in the Amended Settlement Stipulation is consistent with and within the reasonable range of litigation outcomes if the Trustee were to litigate the matters resolved pursuant to this Order. Taking account of the revisions the Trustee has made, with the Insurers' assent as stated on the record at the Hearing, to the required form of Approval Order, the terms hereof satisfy all applicable legal standards, as more fully set forth below.

## Property of the Estate

P.    Fraudulent transfer claims, including fraudulent transfer claims that may be asserted by a debtor's creditors absent bankruptcy, are property of the debtor's bankruptcy estate upon commencement of a case under the Bankruptcy Code, which the bankruptcy trustee or other representative of the debtor's bankruptcy estate has sole authority to assert and/or settle. *Marshall v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, 740 F.3d 81, 89 (2d Cir. 2014).

Q.    The Trustee asserts that the Estate has or may have claims (including claims pursuant to Bankruptcy Code Section 544(b) belonging to Nash's creditors) against the Insurers, the Affiliated Insurers (as defined in the Amended Settlement Stipulation) or any other past or present affiliate of the Insurers, under the Bankruptcy Code (including Section 548 thereof), the Connecticut Uniform Fraudulent Transfer Act, or any other provision of federal or state law, to avoid as a fraudulent transfer or to recover damages on account of the Policy Sale (the "Avoidance Claims").

R.    Any and all Avoidance Claims are property of the Estate which the Trustee has sole authority to assert and/or settle. The Settlement, including release of the Avoidance Claims in exchange for the consideration set forth in the Amended Settlement Stipulation, is a proper

exercise of authority by the Trustee pursuant to Bankruptcy Code Sections 541, 544 and 548, together with applicable rules.

S.    Liability insurance policies issued to a person that becomes a debtor under the Bankruptcy Code are property of such debtor's bankruptcy estate, as are the proceeds of such policies. *Macarthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 837 F.2d 89, 92 (2d Cir. 1988); 11 U.S.C. § 541(a)(6).

T.    The Policies (including any remaining interest of Nash in the Policies notwithstanding the Policy Sale, and any interest of Nash in the Policies if the Policy Sale were to be set aside as a fraudulent transfer) and the proceeds of the Policies constitute property of the Estate pursuant to Bankruptcy Code Section 541(a)(1) and (6).

U.    Under 11 U.S.C. § 363(f), injunctions protecting purchasers of estate assets from liabilities relating to the purchased assets have long been recognized as proper. *See, e.g.*, *Macarthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 837 F.2d 89, 93 (2d Cir. 1988); *Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 428 B.R. 43, 57 (S.D.N.Y. 2010); *In re Patriot Place, Ltd.*, 486 B.R. 773, 821-22 (Bankr. W.D. Tex. 2013), citing *In re Camp Arrowhead, Ltd.,* 451 B.R. 678, 690 (Bankr. W.D. Tex. 2011), and *Regions Bank of Louisiana v. Rivet,* 224 F.3d 483, 491-92 (5th Cir. 2000); *In re Dow Corning Corp.*, 198 B.R. 214, 245 (Bankr. E.D. Mich. 1996).

**Settlement Approval Standard**

V.    Compromises "are favored in bankruptcy," 9 <u>Collier on Bankruptcy</u>, ¶ 9019.03 at 9019-3 (15th ed. 1995), and "help clear a path for the efficient administration of the bankrupt estate." *In re Iridium Operating LLC*, 478 F.3d 452, 455 (2d Cir. 2007). A settlement proposed by the estate representative should be approved if the Court determines that the settlement falls

above the lowest point of reasonableness, is fair and equitable, and is in the best interests of the estate. *Id. at* 462. The Second Circuit in *Iridium* identifies seven factors the Court should consider in making this determination. These are considered in sequence immediately below.

### *Balance between possibility of success in litigation and benefits of the settlement*

W.     The Settlement is in the best interests of the Estate in view of the benefit of the Settlement when weighed against the potential risks and costs of litigating the Avoidance Claims to their final disposition.

X.     The key benefits of the Settlement are the Insurers' payment of $9 million at the Closing, and their commitment to use commercially reasonable efforts to settle the claims against the Insurers and the Estate of any lawyer or law firm that supplied legal services prior to the Petition Date to defend Nash against any Asbestos Personal Injury Claim ("Defense Services"). Any such settlements will reduce the total amount of general unsecured claims against the Estate, thus increasing the percentage distribution to other general unsecured creditors.

Y.     The key contested issue concerning the Avoidance Claims is whether the terms of the Insurance Buyback Agreement provided reasonably equivalent value to Nash for giving up the Policies. Connecticut law requires allocation of indemnity and defense costs for Asbestos Personal Injury Claims as they are incurred, and the Insurers would be expected to pay their *pro rata* share for each claim – a share that varies for each claim based on the claim itself (*i.e.*, the years of the claimant's exposure) and the time periods of coverage provided by the Policies. *Security Ins. Co. v. Lumbermens Mut. Cas. Co.*, 826 A.2d 107, 115-16 (Conn. 2003); *R.T. Vanderbilt Co. v. Hartford Acc. & Indem. Co.*, 156 A.3d 539 (Conn. 2019). The Insurance Buyback Agreement required the Insurers to provide funds earlier than the law requires, and further required the Insurers to use those funds to pay 100% of indemnity and defense costs

rather than merely their *pro rata* share, which the Insurers contend would be less than 10% in most instances. The Trustee, however, takes the position that the total of $14.35 million in indemnity and defense costs to be paid by the Insurers under the Insurance Buyback Agreement was not reasonably equivalent to the net present value of the payments for which the Insurers might eventually be liable under Connecticut law, which Ankura's analysis estimates at about $40 million. That analysis relies on assumptions and methodologies to estimate the value of the Asbestos Personal Injury Claims (and therefore the Policies), and to determine net present value, that the Insurers pervasively challenge. If the Insurers were to prevail in the Trustee's lawsuit to recover the Avoidance Claims, the Estate would recover either zero or, over time, the amount the Insurers had not yet paid under the Insurance Buyback Agreement as of the Petition Date (approximately $2.9 million). Even if the Trustee were to prevail in the litigation, the Insurers take the position that the Estate would be entitled solely to reinstatement of the Policies, and would owe the Insurers most of the $11.4 million the Insurers had spent under the Insurance Buyback Agreement before the Petition Date. The Insurance Buyback Agreement, according to the Insurers, also provided significant non-financial consideration of value to Nash.

Z. The outcome of litigation of the Avoidance Claims is highly uncertain. The Settlement eliminates this uncertainty. Even without taking into account the substantial cost of litigating the Avoidance Claims to a conclusion and potentially defending any judgment on appeal, the receipt of $9 million at the Closing is far above the bottom of the range of probable outcomes to the litigation.

### *Likelihood of protracted and complex litigation*

AA. The Settlement allows the Parties to avoid the delay, expense, and risk associated with what undoubtedly would be protracted and complex litigation. Even without the

Trustee having yet brought suit on the Avoidance Claims, the Estate and the Insurers have already incurred substantial fees and costs. If suit were commenced, the litigation would be expensive and protracted. It would include extensive motion practice, voluminous discovery, and substantial other pre-trial activity. The nature of the dispute, involving complex factual issues such as the value of the Policies at the time of the Policy Sale, means that it would not likely be determined on a motion to dismiss or a motion for summary judgment. Both sides would incur substantial fees for expert witnesses, as well as legal fees. Trying the case before a jury in this Court would likely take at least one to two weeks and would be followed by substantial post-trial activity, potentially including an appeal by one or both Parties.

### *Paramount interests of creditors*

BB.     The claims asserted against the Estate, primarily Asbestos Personal Injury Claims, are largely held by individuals in poor health who will benefit from the earliest possible distribution in the Chapter 7 Case. Upon commencement of the Chapter 7 Case, the Estate had no cash. The Settlement is the first resolution of a substantial claim asserted by the Trustee. The $9 million the Settlement will bring into the Estate is not only a substantial sum in and of itself but will assist the Trustee in his pursuit of other claims, such as to recover damages from Nash's directors and officers for alleged breaches of fiduciary duty and to recover distributions made to Nash's owners that the Trustee alleges were fraudulent transfers. The Settlement serves the paramount interests of creditors because it advances the Trustee's goal of providing an early and substantial distribution to holders of Asbestos Personal Injury Claims.

### *Support of other parties*

CC.     The Trustee has been in ongoing communication with holders of Asbestos Personal Injury Claims, through their counsel, and consulted with them concerning the

Settlement. The Trustee reports that they expressed enthusiastic support for the Settlement. The record indicates that no objection to the Motion has been filed by any creditor, while Statements of Support reflect active and affirmative support for the Settlement by 1,154 holders of Asbestos Personal Injury Claims. In sum, the Settlement has the overwhelming support of parties in interest.

### *Competency and experience of counsel*

DD.     The Trustee (as well as the Insurers) has been represented by counsel who are competent and experienced in bankruptcy, litigation, and insurance coverage, and fully capable of advising about the pros and cons of entering into the Settlement.

### *Nature and breadth of releases*

EE.     In exchange for paying $9 million to the Estate and attempting to settle claims for Defense Services, the Insurers are to receive a broad release backed by an injunction against pursuit by any party of the Avoidance Claims or any claims for insurance coverage under the Policies, all of which are resolved by the Settlement. These protections are reasonable, customary, and fully appropriate in light of the magnitude of the consideration provided by the Insurers and their justifiable concern to achieve finality in regard to the Avoidance Claims and the Policies.

### *Arm's Length Bargaining*

FF.     The Trustee-Insurer Mediation process which produced the Settlement entailed months of intense negotiations, facilitated and overseen by a highly-qualified mediator approved by the Bankruptcy Court. There is no doubt that the Settlement reflects arm's-length bargaining.

### *Sale Approval*

GG. The Amended Settlement Stipulation includes a sale of the Policies to the Insurers as an integral and essential part of the Estate's compromise of litigation claims against the Insurers concerning the Policies. The amount to be paid and other value supplied by the Insurers under the Amended Settlement Stipulation (the "Settlement Consideration") is fair and reasonable in the context of the Parties' compromise of such claims. The Settlement Consideration is not meant to establish, does not establish, and shall not be used in any other proceeding as evidence of the value of the Policies themselves.

HH. The Insurers are good-faith purchasers of the Estate's interest in the Policies for value within the meaning of Bankruptcy Code Section 363(m) and are entitled to the protection thereof. The Trustee, the Estate, and the Insurers have not engaged in any conduct that would (i) cause or permit the Amended Settlement Stipulation, or the sale of the Policies contemplated therein, to be avoided under Bankruptcy Code Section 363(n), (ii) cause or permit any amounts, costs, attorneys' fees, expenses, or punitive damages to be recovered under Bankruptcy Code Section 363(n), or (iii) prevent the application of Bankruptcy Code Section 363(m).

II. The Trustee may sell all of Nash's and the Estate's right, title, and interest in and under the Policies free and clear of all claims and other interests under Bankruptcy Code Section 363(f) and applicable non-bankruptcy law because, in each case, one or more of the criteria set forth in Bankruptcy Code Section 363(f)(1)-(5) have been satisfied.

JJ. A sale of the Policies other than one free and clear of all claims and other interests would be of substantially less benefit to the Trustee, Nash, the Estate, and Nash's creditors than the sale for which the Trustee seeks approval. The Insurers would not purchase the Policies and provide the Settlement Consideration were the sale not free and clear of all claims and other interests pursuant to Bankruptcy Code Section 363(f).

KK.     The compromises contained in the Amended Settlement Stipulation are a valid and proper exercise of the reasonable business judgment of the Trustee and represent an exchange for reasonably equivalent value. The releases to be given by the Trustee pursuant to the Amended Settlement Stipulation are appropriate and should be approved. The Insurers would not have entered into the Amended Settlement Stipulation or any of the compromises and settlements contained therein, or agreed to provide the Settlement Consideration, without the benefit of obtaining the releases contained in the Amended Settlement Stipulation and the injunction set forth in Paragraph 6 of this Order (the "<u>Injunction</u>").

LL.     This Court has authority under Bankruptcy Code Sections 105(a), 363(f), 541, 544, and 548 to enter the Injunction. The Injunction is essential to give effect to the sale of the Policies to the Insurers free and clear of all claims and other interests pursuant to Bankruptcy Code Section 363(f). The Insurers have informed the Trustee that (i) the Injunction, as set forth in Paragraph 6 below, is a necessary prerequisite for entry into the Amended Settlement Stipulation, and (ii) they will not consummate the purchase of the Policies and provide the Settlement Consideration in the absence of the Injunction.

**BASED UPON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1.     **Grant of Motion**. The Motion is granted and the Settlement is approved. The Amended Settlement Stipulation is approved and adopted as an order of this Court. The Court has been informed by counsel on the record at the Hearing that the UST Objection has been, and hereby is, resolved by entry of this Order and the Parties' agreement to the Amended Settlement Stipulation. The Gardner Denver Objection and any other objections to the Motion, the Settlement, or the terms of the Amended Settlement Stipulation that have not been otherwise

withdrawn, waived, or settled are overruled.

2. **Authority to Consummate Settlement**. The Trustee is authorized to take any and all actions necessary or appropriate to consummate the Settlement, and to perform the Estate's obligations under the Amended Settlement Stipulation, including execution of such additional instruments and documents as are not inconsistent with the Settlement.

3. **Binding Effect of Amended Settlement Stipulation**. Each and every term and provision of the Amended Settlement Stipulation, together with the terms and provisions of this Order, shall be binding in all respects upon all persons and entities, including the Trustee, the Estate, the Insurers, the Affiliated Insurers, creditors, shareholders, and any person holding or asserting any claim against or interest in Nash or the Estate for insurance coverage under the Policies, *provided, however,* that in the event of any inconsistency between the Amended Settlement Stipulation and this Order, the terms of this Order shall prevail.

4. **Policies Terminated**. Without limiting the generality of the foregoing, from and after the Closing, pursuant to 11 U.S.C. § 363(b) and (f) and case law recognizing a trustee's exclusive right to settle a bankruptcy estate's property (including its claims and causes of action), the Insurers shall be deemed to have purchased, shall hold, and shall be deemed to have terminated the Policies free and clear of any interest in the Policies or their proceeds held by the Estate or any holder of an Asbestos Personal Injury Claim or any other person or entity for coverage or other rights under the Policies.

5. **Release of Estate's Claims.** Effective as of the Closing, the Insurers, the Affiliated Insurers, and any other past or present affiliate of the Insurers are and shall be released, remised, and forever discharged of and from any and all claims of the Trustee, Nash, or the Estate, including the Avoidance Claims. For the avoidance of doubt, such release shall not

include obligations of the Insurers under the Amended Settlement Stipulation and shall not include any claim that is not property of the Estate.

6. **Injunction in Aid of Approved Settlement**. **From and after the Closing, pursuant to 11 U.S.C. §§ 105, 363(f), 541, 544, and 548, all persons and entities, including the Trustee, the Estate, Nash, and creditors of the Estate, including any and all holders of Asbestos Personal Injury Claims, along with their respective successors and assigns, shall be and hereby are permanently and forever stayed, barred, restrained, and enjoined from asserting against the Insurers or Affiliated Insurers any claim for insurance coverage under the Policies, or claims based upon the Avoidance Claims or the Settled Claims,** *provided, however,* **that such injunction shall not apply to claims for Defense Services.**

7. **Certification of Closing**. In order to provide notice of the occurrence of the Closing to this Court and all persons seeking to determine whether the foregoing release and injunction have taken effect, the Trustee shall within 14 days after the Closing occurs file a certificate so stating. If, on the contrary, the Trustee determines that the Closing will never occur, the Trustee shall within 14 days thereafter file a certificate so stating.

8. **Continued Effect of Mediation Order.** All requirements of confidentiality, privilege, and other protections against disclosure in the Trustee-Insurer Mediation shall remain in full force and effect except to the extent, and only to the extent, specified in writing, or on the record in a judicial proceeding, jointly by the Trustee and the Insurers. Nothing in this Order shall be deemed to modify the provisions of any prior order concerning confidentiality of the Trustee-Insurer Mediation.

9. **Preservation of Other Insurance.** Notwithstanding any other provision of this Order, nothing herein shall have any effect on (i) Columbia Casualty Company (CNA) policy

number RDU 365 29 86 (for the period 4/1/77 to 1/13/78), Northbrook Insurance Company (Allstate) policy number 63 004 121 (for the period 1/13/78 to 1/13/79), Stonewall Insurance Company (Berkshire Hathaway) policy number 56016590 (for the period 4/3/86 to 1/1/87), and any and all other known or unknown liability insurance policies, whether primary, umbrella, or excess or any other kind of policy providing liability coverage, ever issued by any of the same insurers, any past or present affiliate thereof, or any insurer other than an Insurer or an Affiliated Insurer, to or for the benefit of Nash or that potentially or actually provide coverage of Asbestos Personal Injury Claims, or (ii) any liability insurance policy issued by an insurer other than an Insurer or an Affiliated Insurer.

10.    **Interpretation of this Order**.  The setting forth in this Order of certain provisions of the Amended Settlement Stipulation shall not be construed to derogate from the effectiveness of any provision of the Amended Settlement Stipulation not set forth herein.  For the avoidance of doubt, all provisions of the Amended Settlement Stipulation are incorporated in this Order and enforceable in accordance with their terms, *provided, however,* that in the event of any inconsistency between the Amended Settlement Stipulation and this Order, the terms of this Order shall prevail.

11.    **Retention of Jurisdiction**: The Court hereby retains jurisdiction to enforce the terms and conditions of the Amended Settlement Stipulation and this Order.

**SO ORDERED.**

Dated at New Haven, Connecticut this 25th day of September 2025.

  /s/ Janet C. Hall  
Janet C. Hall  
United States District Judge

15803737.v1

17